INTER CONTINENTAL EQUIPMENT CO., ROHNER GEHRIG & CO., INC. v. UNITED STATES (No. 5010) [1]

---

[1] C.A.D. 765.

United States Court of Customs and Patent Appeals, February 6, 1961

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Joseph Schwartz*, of counsel) for appellants.

*George S. Leonard*, Acting Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Alfred A. Taylor, Jr.*, trial attorney, of counsel) for the United States.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

KIRKPATRICK, Judge, delivered the opinion of the court:

The sole question presented by this appeal is whether the imported articles are structural shapes within the meaning of paragraph 312 of the Tariff Act of 1930 as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739. If they are not, then, by stipulation, they were properly classified under paragraph 397 as "articles * * * not specially provided for * * * composed * * * in chief value of * * * steel."

Paragraph 312 of the Tariff Act as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade is as follows:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:

Not assembled, manufactured or advanced beyond hammering, rolling, or casting_____0.1 cent per lb.

Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting_____7½% ad val.

The Customs Court held that the imported articles were not structural shapes. The consular invoice describes them as "anchorages," although in the record they are more often called "cones." They consist of two sections, the larger of the two being the female section which is made by placing two coiled steel pieces in a mold and casting concrete around them. The smaller section, referred to as the male section, consists of a hollow conical steel member with wire mesh having concrete cast about it. Two representative units, both female, offered in evidence weighed 6 and 12 pounds respectively, the larger one being five inches in diameter and five inches long.

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

The cones are used exclusively in the construction industry in prestressing concrete members, their function being to anchor cables which have been put under tension, to retain that stress and transmit the compressive force thereby created to both ends of a concrete member.

The manner in which they are put to work and the way in which they function are as follows:

The concrete member to be prestressed is cast with a longitudinal hole running through its length. A special high-tensile wire cable is then introduced into the hole through a female cone placed at one end of the member, the cable being held fast by wedging it with a male cone. At the other end of the member the cable is drawn out through another female cone, the wires distributed evenly about the rim of the opening of the female cone, and the male cone tapped into place to retain its position. The wires are then attached to a hydraulic jack, the base of the jack being placed against the male cone. The jack is then operated so that the wires are pulled outward and, at the same time, the male cone is forced into the female cone to wedge the wires and hold the cable under tension. The ends of the wires sticking out of the cones are then cut off and the cones themselves covered with concrete.

The advantage of this method of construction lies in the fact that pre-stressed concrete *beams* are much stronger and can carry much heavier loads than beams not so pre-stressed.

In support of its claim that the cones are structural shapes, the appellants point to the facts that the cones themselves are capable of resisting great pressures and tensions, that their use adds greatly to the strength and stability of the concrete members of the structure in which they are used, at the same time making it possible to reduce the amount of material required by as much as 30 percent, and that after installation they become a permanent part of the structure and cannot be removed.

However, while these cones can resist great pressures and tensions in the sense that they will not be crushed or torn apart when performing their function in the structure, their part in supporting the loads is as "anchorages", which name aptly describes them and their function. What they do is, by acting as anchors, make it possible for wire cables to exert compressive force upon the members with which they are used and so strengthen them.

We cannot regard these devices, whose primary function is to fasten the ends of a cable, as structural shapes even though, because of the way the cable is used, they are subjected to severe strains and even though they become a permanent part of the structure and are never removed. In *United States* v. *Humble Oil & Refining Co., et al.*,

46 CCPA 138, 140, C.A.D. 717, this court said, "* * * we are unable to agree with the apparent holding that every element which is a part of a structure is a 'structural shape' if it is subjected therein to forces and loads such as tension, compression and the like." This language, it seems to us, is particularly apposite to the importation involved in the present case.

The judgment of the Customs Court is *affirmed*.